**George V. ZMUDA and Walburga Zmuda, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

No. 83–7374.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1984.

Decided April 30, 1984.

John Bernard, San Francisco, Cal., for petitioners-appellants.

William Whitledge, Washington, D.C., for defendant-appellee.

Before WRIGHT, GOODWIN and NOR-RIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Following a program developed by the American Law Association (ALA), the Zmudas set up three foreign trusts to avoid taxes on the income from properties in the United States. The Tax Court found that these trusts were shams, disallowed certain deductions, and assessed civil penalties.

The petitioners complain that their due process rights were violated by lack of sufficient notice that they should defend the trusts against a theory of sham. They also challenge the legal standard applied by the Tax Court in determining the invalidity of the trusts, the disallowance of several deductions, and the penalty assessment.

## FACTS

ALA seminars represent that a taxpayer utilizing complicated business trusts organized in either the Turks and Caicos Islands, British West Indies, or the country of Belize (formerly British Honduras) can legally minimize or avoid the payment of federal taxes.

In 1977, the Zmudas paid the ALA a $10 membership fee and $8,000 for a seminar on tax avoidance. After receipt of forms and information on the establishment and use of business trusts, they flew to the Turks and Caicos Islands to set up a series of trusts.

The scheme required the cooperation of a local citizen to act as creator of the trusts. A notary public, Irene Roberts, and her brother, Lloyd, both previously unknown to the Zmudas, provided this cooperation.

The Zmudas transferred $100 to Lloyd Roberts in exchange for 100 certificates of beneficial interest in Sunnyside Trust. Ownership of the certificates did not entitle the holder to any legal or equitable title in the trust property, nor to any right to manage the trusts, except in the event of their termination.

Lloyd then named the Zmudas as trustees of Sunnyside. As trustees, they had complete power to manage the trust and to distribute the income and corpus. Sunnyside, however, had no real assets. Its function was to act as trustee for the other two trusts, Buena and Medford.

The Zmudas transferred income-producing property, including real estate contracts and deeds of trust, into Buena Trust. In exchange they received 100 certificates of beneficial interest which they immediately sold to the third trust, Medford. These machinations produced a foreign trust, Buena, whose income was distributed to another foreign trust, Medford. Medford loaned money to the Zmudas in exchange for promissory notes. The notes were then delivered as gifts to the Zmudas, resulting in approximately $21,000 of allegedly tax-free income.

The Commissioner issued a deficiency notice to the Zmudas on unreported income and on disallowed business deductions for the years 1976–78. He found that income received from the trusts was attributable to the Zmudas as gross income. He disallowed deductions for fees paid to the ALA and for other business expenses. The Tax Court affirmed in all respects. *Zmuda v. Commissioner*, 79 T.C. 714 (1982).

## I. Sufficiency of Notice

The Zmudas contend that they received no specific notice that the Commissioner would attack the trusts as shams. At trial the Commissioner advanced the theory that the trusts were grantor trusts. The sham theory, they claim, appeared only in the Commissioner's post-trial brief.

██ Due process requires reasonable notice to parties before action is taken to deprive them of property. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). To establish a violation of due process, a taxpayer must show surprise or disadvantage resulting from inadequacy or lack of notice. *Stewart v. Commissioner*, 714 F.2d 977, 986 (9th Cir.1983).

██ A Notice of Deficiency affords the taxpayer an opportunity to challenge an alleged deficiency in Tax Court before he must pay it. *Bauer v. Foley*, 404 F.2d

1215 (2nd Cir.1968). A deficiency notice is insufficient if the Commissioner later introduces "new matter". *Abatti v. Commissioner,* 644 F.2d 1385, 1390 (9th Cir.1981); Tax Ct.R. 142(a). A theory not inconsistent with the language of a broadly worded deficiency notice is not "new matter." *Abatti,* 644 F.2d at 1390.

■ The Notice of Deficiency sent to the Zmudas stated:

> The interest [received by Buena] is includible in [petitioners'] gross income in accordance with section 61(a)(4) of the Internal Revenue Code.
>
> An alternative position is that if the interest has been included in the income of a trust organization and *if the trust organization was found to be a valid trust,* then the trust would be a grantor trust and the interest is includible in your gross income in accordance with section 671 of the Internal Revenue Code.

*Zmuda,* 79 T.C. at 722 n. 19 (emphasis added).

The Zmudas argue that they were disadvantaged because they emphasized at trial the question of control, which is critical to the identification of a grantor trust. They did not urge the business purpose of the trusts, which they contend would establish the validity of the entities as common-law trusts. They submit that evidence in the form of business records and meeting minutes would show the substance of the trusts.

This argument is specious. The disadvantage, if any, was a result of petitioners' strategic choice to ignore the wording of the deficiency notice. *Cf. Stewart,* 714 F.2d at 986. Moreover, even if the Zmudas had presented their claimed evidence of business purpose, we agree with the Tax Court that "additional layers of paper" would not give the entities "vitality." 79 T.C. at 722.

■ The Tax Court found that "the notice did sufficiently apprise petitioners that respondent would rely on the sham theory as well as the grantor trust provisions."

*Id.* at 722 n. 19. The Tax Court's reading of the notice is a finding of fact to be overturned only if clearly erroneous. *Abatti,* 644 F.2d at 1389.

The deficiency notice indicated that the validity of the trusts was in question. The primary position of the Commissioner was that the Buena income was directly taxable as gross personal income. The grantor trust theory was an alternative position. The Tax Court's finding was correct.

The pleadings also show that the Zmudas had notice that the Commissioner did not recognize the entities as common-law trust organizations. In response to the deficiency notice, their petition to the Tax Court alleged that Buena was a common-law trust organization. The Commissioner's answer denied this allegation. The validity of the entities was in question at trial.

The deficiency notice and the Commissioner's pretrial pleading sufficiently informed the Zmudas that the validity of the trust was in question.

*II. Legal Standard*

The Zmudas assert that the Tax Court incorrectly applied the economic substance rule rather than the business purpose rule to determine the validity of the trusts. It found that the creation of Buena did not alter any cognizable economic relationship between the Zmudas and the trusts. The Zmudas contend that a showing of business purpose, substantiated by business records and meeting minutes, would have validated the entities as business trusts.

■ This argument attempts to create a distinction where none exists. There is no real difference between the business purpose and the economic substance rules. Both simply state that the Commissioner may look beyond the form of an action to discover its substance.

The business purpose rule has been used to determine the validity of the formation of an entity. If the purpose of incorporation is a business activity, such as investment or profit, or if incorporation is followed by the conduct of business, then the corporation is a separate taxable entity.

*Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 438–39, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943). The existence of a partnership also is determined by its business purpose. *Commissioner v. Tower,* 327 U.S. 280, 286–87, 66 S.Ct. 532, 535–36, 90 L.Ed. 670 (1946).

The economic substance or economic effect rule focuses on transactions by a recognized entity. " 'Sham' transactions, having no economic effect other than the creation of income tax losses, cannot be recognized for tax purposes." *Thompson v. Commissioner,* 631 F.2d 642, 646 (9th Cir. 1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). The rule applies to loans, *Beck v. Commissioner,* 678 F.2d 818, 821 (9th Cir.1982), and transfers of assets, *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945).

Economic substance may be an element of business purpose. A finding that "no real change in the economic relation" between the parties occurred establishes that no partnership exists for business purposes. *Tower,* 327 U.S. at 291, 66 S.Ct. at 537.

■ The business purpose rule may be applied to individual transactions. A transfer of assets in a corporate reorganization that has no business purpose has been deemed a contrivance and disallowed for tax purposes. *Gregory v. Helvering,* 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). Similarly, the economic substance formula may be used to determine whether a family trust is valid, *Markosian v. Commissioner,* 73 T.C. 1235 (1980), and whether a trust is a grantor trust for tax purposes, *Hanson v. Commissioner,* 696 F.2d 1232, 1234 (9th Cir.1983).

■ The terminology of one rule may appear in the context of the other because they share the same rationale. Both rules elevate the substance of an action over its form. Although the taxpayer may structure a transaction so that it satisfies the formal requirements of the Internal Revenue Code, the Commissioner may deny legal effect to a transaction if its sole purpose is to evade taxation. *Stewart,* 714 F.2d at 987.

■ After reviewing the transactions involved in both the formation and subsequent activities of the entities here, the Tax Court found the trusts invalid. Although Lloyd Roberts is referred to as the creator of the trusts, he never held or contributed any of the property placed in them. The Zmudas as trustees had complete control over the income-producing property of the trusts. The Buena Trust engaged in no trade or business. These findings are not clearly erroneous and will not be disturbed. *Geneva Drive In Theatre, Inc. v. Commissioner,* 622 F.2d 995, 996 (9th Cir.1980).

Whether termed lacking in business purpose or lacking in economic substance, the trusts here were shams. The Tax Court properly considered the economic effect of the trusts and ignored formalisms that would impair the effective administration of Congress's tax policies.

*III. Disallowed Deductions*

■ The taxpayer has the burden of proof to substantiate claimed deductions. *Rockwell v. Commissioner,* 512 F.2d 882, 886 (9th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). The determination that a taxpayer has failed to produce sufficient evidence to support a deduction is one of fact subject to reversal only if clearly erroneous. *Chism's Estate v. Commissioner,* 322 F.2d 956, 961 (9th Cir.1963).

The Zmudas claimed deductions for ALA membership and seminar fees under 26 U.S.C. § 212 (1976). This section permits deductions for all ordinary and necessary expenses paid: (1) for the production or collection of income; (2) for management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.

■ The Zmudas stated that they established the trusts: (1) to allow real property

investments to continue after death; (2) to limit personal liability; (3) to avoid probate costs; and (4) to minimize taxes. These reasons do not meet the standards of. section 212.

■■■ The Zmudas simply restructured the form in which they hold their property. The transfer into the trusts did not aid in the production of income nor did it alter management activity. Rearranging title is not related to management or conservation under section 212. *Schultz v. Commissioner*, 50 T.C. 688 (1968), *aff'd per curiam*, 420 F.2d 490 (3rd Cir.1970). Section 212 was not designed to allow tax deductions based on mere preservation of net worth. *Woodward v. Commissioner*, 410 F.2d 313, 318 (8th Cir.), *aff'd*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1969).

■■ The Zmudas also claimed deductions in connection with the sale of property in Alaska. The Tax Court found that testimony by the Zmudas indicating that they were readying the property for sale failed to show that they held the property for the production of income. We see no error in this finding.

*IV. Penalty Assessments*

■■ The IRS may assess penalties for negligent or intentional disregard of income tax rules and regulations. 26 U.S.C. § 6653(a) (1976). The taxpayer bears the burden of establishing that the penalty was erroneous. *Hanson*, 696 F.2d at 1234.

■■ Negligence under section 6653(a) is determined by the reasonable, prudent person standard. *Marcello v. Commissioner*, 380 F.2d 499, 506 (5th Cir.1967), *cert. denied*, 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968). The Tax Court found that the Zmudas made no reasonable inquiry as to the legality of their plans.

The accountant preparing the Zmudas' 1977 forms warned of possible tax consequences from the transfer of property to the trusts. The Zmudas ignored that advice and proceeded without seeking further counsel.

They base the reasonableness of their actions on dictum in *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.1983), *petition for cert. filed*, 52 U.S.L.W. 3613 (U.S. Feb. 6, 1984) (No. 83–1297). In *Dahlstrom*, we noted that the "legality of the [ALA] tax shelter program was completely unsettled by any clearly relevant precedent ...." *Id.* at 1428. However, *Dahlstrom* specifically distinguished between criminal violations of the tax laws, which require proof of willfulness, and the sort of negligent conduct involved here. *Id.* at 1427–28. Whereas the unsettled state of the law precludes a finding of willfulness, it does not preclude a finding of negligence.

There is no evidence that the Zmudas sought independent legal advice before or after their financial commitment of $8,000 to the ALA. This failure can scarcely be viewed as reasonable in light of extensive continuing press coverage of questionable tax shelter plans. *See, e.g., Some "Tax Shelters" Mean Big Trouble*, Changing Times, August, 1975, at 31; *From the IRS: A Warning About Fancy Tax Shelters*, U.S. News & World Rep., July 26, 1976, at 66; *Word of Warning for Taxpayers, id.*, November 29, 1976, at 35; *Underway: Crackdown on Tax Shelters, id.*, November 21, 1977, at 106; *When Tax Shelters Become Tax Frauds, id.*, October 11, 1982, at 13.

■■ The IRS recently promulgated new regulations specifically designed to address the abusive tax shelter schemes advanced by some tax practitioners. *See* 31 C.F.R. 10.33, 10.51. These require the promoter to warn the investor of all possible tax consequences should the scheme later be held invalid. However, these regulations do not relieve the individual investor from the duty to make a reasonable inquiry before acting.

The Zmudas acted negligently at best. In view of the warnings of their own accountant, their behavior approached intentional disregard of the tax rules. We repeat the warning that Revenue Commissioner Kurtz issued the year these trusts were established: Investors in shelters "may be passing the bounds of tax avoidance and entering the world of tax evasion." *Underway: Crackdown on Tax Shelters*, U.S. News & World Rep., November 21, 1977, at 106.

Because the Zmudas have not shown that they acted reasonably, all penalties are affirmed.

CONCLUSION

The ALA plan was a sham from inception. A nominal transfer of $100 into a trust followed by the shuffling of fanciful certificates of beneficial interest created a serpentine conduit for income to the Zmudas. The income that they previously collected directly did not change its character through this phony diversion.

The Tax Court determined correctly that the Notice of Deficiency adequately informed the Zmudas that the IRS would attack the trusts as sham. The court properly considered the lack of alteration in economic relationships in finding the trusts invalid. The court's denial of deduction for ALA fees was not clearly erroneous. The penalties were appropriate in light of the Zmudas' failure to make reasonable inquiry into the validity of the ALA plan.

The judgment of the Tax Court is affirmed.