JOHN AND GLINDA TODD, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Todd v. Commissioner
Docket No. 2507-89
United States Tax Court
T.C. Memo 1992-50; 1992 Tax Ct. Memo LEXIS 55; 63 T.C.M. (CCH) 1918; T.C.M. (RIA) 92050; January 28, 1992, Filed *55 Decision will be entered for respondent. John Todd, pro se. Mary Tseng and Susan Hergenhan, for respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioners' Federal income tax, and increased interest: Additions to Tax and Increased Interest
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661(a)
Sec. 6621(c)
1984
$ 8,427
$ 421
[1]
$ 2,107
n2
1985
6,583
329
[1]
1,646
n2
Sec.
Sec.
6653(a)(1)(A)
6653(a)(1)(B)
1986
4,090
205
[1]
N/A
n2
The issues for decision are: (1) Whether petitioners' Schedule C business expenses for tax years 1984, 1985, and 1986 are deductible pursuant to sections 162 and 183; [1] (2) whether petitioners are allowed a residential energy tax credit pursuant to section 46 for the years in issue; (3) whether petitioners are allowed a general *56 business tax credit pursuant to section 38 for the years in issue; (4) whether petitioners are liable for additions to tax pursuant to section 6653(a), negligence or intentional disregard of the rules, for tax years 1984, 1985, and 1986; (5) whether petitioners are liable for additions to tax pursuant to section 6661, substantial understatement of income tax liability, for tax year 1984 and 1985; and (6) whether petitioners are liable for increased interest pursuant to section 6621(c), substantial underpayments attributable to a tax-motivated transaction, for tax years 1984, 1985, and 1986. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. Petitioners resided in Carson, *57 California, at the time this petition was filed. John Todd, hereinafter petitioner, was employed as a full-time millwright. Glinda Todd was employed by Transamerica Occidental Life Insurance Co. as a contract analyst. During the years in issue, petitioners filed timely joint Federal income tax returns. On January 2, 1984, petitioner entered into a written contract with Solar Innovation of California to be a sales representative for solar energy units. [2] Under the contract, petitioner was to receive a fixed commission of $ 200 for every credit-approved order written by the agent which Solar Innovation accepted. The term of the contract was 5 years. The contract also stipulated that petitioner was to pay Solar Innovation $ 18,495; however, the contract did not state what this amount represents. Petitioner did not seek the professional advice of an attorney, accountant, or investment analyst to ascertain if the investment [3] was commercially viable prior to signing the agreement. Likewise, he was not cognizant of how many units he would have to sell in order to recoup his investment. *58 Petitioner instructed the bank to pay on his behalf $ 6,160.87 to Solar Innovation of California. In addition, petitioner presented cash receipts totaling $ 6,990 of payments to Mr. Tony, owner of Solar Innovation, against the $ 18,495 sum. Petitioner reported on Schedule C gross sales of $ 1,500, $ 1,700, and $ 2,965 in 1984, 1985, and 1986, respectively. However, in each of those years, the schedules reported that expenses exceeded sales which resulted in net losses of $ 4,967 in 1984, $ 9,096 in 1985, and $ 12,379 in 1986. Petitioner did not use posters, displays, or handouts to promote his investment. Clients were generated primarily through referrals. Petitioner would make initial contact with a potential customer by telephone or in person, refer the interested party to Mr. Tony for closure of the sale, and if financing were achieved, which it generally was not, petitioner would receive his commission of $ 200. In early 1987, Solar Innovation closed down amid allegations by the Internal Revenue Service that it was operating as a tax shelter. Simultaneous to the Solar Innovation investment, petitioner invested in a clean air company, Clean Pure Air Society, Inc. In October *59 1983, petitioners purchased an electrostatic precipitator from Clean Pure Air Society, Inc., for personal use in their residence. Sometime in 1984, petitioner approached the Clean Pure Air Society salesman regarding selling clean air units. The salesman agreed to pay petitioner $ 50 for every referral that culminated in a sale. This agreement was not between the Clean Pure Air Society and petitioner nor was it evidenced in writing. In 1984, petitioner reported on Schedule C gross sales of $ 250 from the sale of clean air units and expenses of $ 3,341. In his notice of deficiency, respondent disallowed all deductions and credits relative to petitioner's activity with both Solar Innovation and the clean air units. OPINION Respondent determined that petitioner was not engaged in a legitimate business activity as defined under sections 162 and 183. Section 162 states that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the tax year in carrying on any trade or business". In order to be eligible for such deduction, the taxpayer must have entered into the activity, i.e., trade or business, with the objective of making a profit. *60 Sec. 183(a). The determination of whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Greater weight must be given to objective facts than to the taxpayer's mere statements of intent. Siegel v. Commissioner, 78 T.C. 659, 699 (1982); sec. 1.183-2(a), Income Tax Regs.
The regulations under section 183 provide a nonexclusive list of factors which should be considered in determining whether the requisite profit objective is present. The factors include: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisor; (3) the time and effort expended by the taxpayer in carrying out the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income and losses with respect to the activity; (7) the amount of occasional profits which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), *61 Income Tax Regs. A record of losses over the years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention. Sec. 1.183-2(b)(6), Income Tax Regs.
Considering the foregoing factors and based on all the evidence in the record, we hold that petitioner has failed to prove that his investments were activities engaged in for profit. Petitioner had no expertise in the solar energy business. Yet, he failed to seek the advice of counsel or have the investment appraised as to its commercial viability. He had no realistic understanding of how many units needed to be sold in order to recoup his investment cost and yield a profit. The contract read as a straightforward sales/commission contract between petitioner and Solar Innovation and did not state or even allude to what the $ 18,495 investment was purchasing. It is the opinion of this Court that the investment price represented the personal investment of petitioner in a solar unit and should not have been depreciated or in any manner treated as a business investment for tax purposes. During trial, Mr. Tony failed to elaborate what the $ 18,495 cash outlay represented and *62 how that price was obtained. He stated: We gave that to the investors and we was [sic] going to pay them $ 200 on every sale irregardless [sic] of who made the sale, for 60 months. We had projected that they would earn approximately $ 2,500 by these people helping each other, per month, and they would go on for 60 months. That's the reason the $ 18,000 was charged.
It is apparent from his testimony that Mr. Tony, like petitioner, has no expertise in the field of marketing, investment analysis, or valuation. Yet it was Mr. Tony's recommendation that petitioner considered in making his investment. Failure to make such elementary inquiries as to exactly what he purchased with an investment in excess of $ 18,000 and the soundness of such a transaction is inconsistent with ordinary business practices and is evidence that petitioner lacked a profit objective. Flowers v. Commissioner, 80 T.C. 914, 938 (1983); Gessler v. Commissioner, T.C. Memo. 1985-390. Moreover, petitioner exhibited the same behavior in his clean air business. Petitioner entered into an oral agreement with a salesman from Clean Pure Air Society, to wit, he would *63 receive from every sale of about $ 895 a $ 50 commission. Petitioner reported on Schedule C that he had gross receipts of $ 250, i.e., he sold 5 units, and like his Schedule C for Solar Energy, reported expenses exceeded sales which resulted in a net loss of $ 3,091. This Court finds it incredible that petitioner would expend $ 856 for automobile expenses, $ 350 for insurance, $ 256 for telephone usage, $ 20 for business meals, and $ 540 for car pooling in relation to the clean air business solely, when petitioner could not substantiate the amount of time he spent soliciting for this business or whether these expenses were commingled with personal usage. Further, the manner in which petitioner maintained his investment activities does not support a claim of profit objective. Petitioner testified that he expended 15 hours per week in carrying on his investments, yet he was unable to demonstrate how this time was spent. He had no concrete method of marketing his products. He maintained a log which contained sporadic entries of names and addresses without any detail as to who was contacted, if anyone, or when a sale was consummated, if at all. Petitioner admitted that not all *64 the people in the log book were actually solicited. Thus, we find that petitioner's books are unreliable. Petitioner reported on Schedule C gross sales for Solar Innovation and Clean Air Society of $ 1,750 in 1984, $ 1,700 in 1985, and $ 2,965 in 1986. However, for 1984 and 1985 petitioner failed to present documentation, i.e., a Form 1099 from Mr. Tony or receipts from each completed sale, to substantiate the amount reported. Petitioner claimed expenses exceeded sales which resulted in net losses of $ 8,308, $ 9,096, and $ 12,379 in 1984, 1985, and 1986, respectively, but presented no credible proof for the expenses deducted on his returns. The expenses represented were both personal and business in nature, yet petitioner failed to allocate between them. Such expenses include telephone charges, interest expense, depreciation expense, [4] and car maintenance. [5]
*65 In summary, petitioner conducted business haphazardly and maintained his books and records in an unbusinesslike manner. We conclude that petitioner has failed to meet his burden of proving that he entered into these investments with an actual and honest profit objective, as required under sections 162 and 183. Accordingly, we uphold respondent's finding and disallow all Schedule C business expenses, residential energy tax credits, and general business tax credits for tax years 1984, 1985, and 1986. Additions To Tax
Section 6653(a)
Sections 6653(a) and 6653(a)(1) provide that if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) imposes an addition to tax in an amount equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), *66 affg. 79 T.C. 714 (1982). Respondent's determination as to negligence is prima facie correct and the burden is upon the taxpayer to prove the addition erroneous. Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Petitioner entered into this investment without investigating its feasibility and without any negotiations as to the amount of the investment or the amount of the commissions. A reasonably prudent investor in the position of petitioner would have, at the least, sought independent counsel as to the feasibility of the investment and determined the commercial viability of Solar Innovation prior to signing the agreement and expending $ 18,495. Petitioner also took depreciation deductions and claimed credits on items known to have a substantial percentage of personal usage and/or known not to be deductible. He purportedly relied upon the "expertise" of Mr. Tony to file his tax returns, yet Mr. Tony had no formal education or training in tax preparation. Again, petitioner failed to investigate the credibility of his advisor on whom he totally relied. Such reliance is contrary to what a reasonable taxpayer in petitioner's position would have *67 done. Petitioner has clearly not met his burden. Accordingly, we uphold the additions to tax for negligence for all the years in issue. Section 6661
If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). A substantial understatement occurs where the understatement exceeds the greater of $ 5,000 or 10 percent of the amount of tax required to be shown on the tax return. Sec. 6661(b)(1)(A). The addition is applicable for tax years 1984 and 1985. Increased Interest
Section 6621(c)
This section provides that with respect to interest payable under section 6601, any substantial underpayment (an amount exceeding $ 1,000) attributable to tax-motivated transactions shall be subject to an annual rate of interest of 120 percent of the adjusted rate established under section 6621(b). The increased rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to that date. Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without *68 published opinion 795 F.2d 1005 (2d Cir. 1986). Included within the definition of tax-motivated transaction is any deduction disallowed for any period under section 183. Since we have determined that the investment in Solar Innovation was not conducted with the required profit objective for Federal income tax purposes, we accordingly conclude that section 6621(c) applies to all the years in issue. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. 50 percent of the interest due on the deficiency. The contract reads: The party or parties to this Solar demonstration system dated 1/02/84, 1984 are Solar Innovation of California, hereinafter referred to as the "Principal" and John Todd, hereinafter referred to as "salesperson" (whether or not there is more than one.) 1) Solar Innovation of California, (principal), hereby agrees to the salesperson a full time salesperson. [sic]. 2) Terms: This agreement shall be for a period of 60 months commencing the 2 day of Jan. 1984. 3) Agreement: The salesperson agrees to pay the "principal" or its assignee, the sum of $ 18,495 upon execution of this agreement receipt which shall be hereby acknowledged. 5) Possession and Assignment: The principal will retain sole possession of Demo. Truck and will retain exclusive right to the assignment of a full-time salesperson. 6) Commission: The principal shall pay to the client a fixed commission of $ 200 on each order, written by salesperson assigned to the Demo. Truck mentioned in item of this agreement. [sic]. [2]↩ 120 percent of the interest due on the deficiency.
1. All section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. The use of such terms as "investment", "invested", "agreed", and "purchase" are used strictly for convenience to describe the transactions involved in this case, and should not be construed as connoting any conclusions as to the legal effect of the documents and transactions.↩
4. E.g., in 1986 petitioner deducted $ 4,627 for depreciation expense on business equipment valued at $ 11,000 and two cars. One car was used by petitioner wife who is not involved in petitioner's investments and the other used by petitioner for both personal and business. ↩
5. Notwithstanding the depreciation deduction taken for personal use of two cars, petitioner deducted in 1986, for example, $ 1,012 for gas and maintenance and $ 381 for repairs.↩