JOHN PAUL MARCINEK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marcinek v. Commissioner
Docket No. 18099-89
United States Tax Court
T.C. Memo 1993-631; 1993 Tax Ct. Memo LEXIS 645; 66 T.C.M. (CCH) 1805; December 28, 1993, Filed *645 Decision will be entered under Rule 155. For petitioner: Edward B. Simpson. For respondent: Patricia A. Golembieswski. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6659
Sec. 6661 [2]
1982
$ 7,182.50
$ 359.12
[3]
$ 2,154.75
$ 1,796
1983
6,142.50
307.12
[3]
1,842.75
1,536
1984
3,398.00
194.90
[3]
1,169.40
--
1985
14,465.00
723.25
[3]
4,339.50
3,616
1986
14,612.00
730.60
[3]
4,383.60
3,653
*646 Respondent also determined that petitioner is liable for an increased rate of interest under section 6621(c). After concessions by the parties at trial, the issues remaining for decision are: (1) Whether petitioner is liable for the section 6653(a)(1) and (2), and section 6653(a) (1)(A) and (B) additions to tax, as applicable, and (2) whether petitioner is entitled to Schedule C deductions beyond those allowed by respondent. Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner maintained his legal residence in the State of California on the date the petition was filed in this case. From 1959 to 1972, petitioner was a managerial employee of the special projects division at Kaiser Aluminum specializing in the transportation industry. During the late 1960s and early 1970s petitioner conducted multiple marketing studies on the application of aluminum to the container market. According to petitioner, integral to these marketing studies was an analysis of the tax laws, specifically the investment tax credit and depreciation. In 1972, petitioner left Kaiser Aluminum to work as *647 a pension and annuity analyst in the insurance industry. Later, petitioner left the insurance industry to become director of the Central Banking Systems. According to petitioner, as director of Central Banking Systems, he developed a nontaxable retirement investment, the forerunner of the IRA. Petitioner retired in 1976 and has been an independent investor since. In 1982, Gold Depository and Loan Company (GD&L) first came to petitioner's attention when his wife, who at that time was managing her mother's assets, became interested in investing in GD&L. Petitioner stated that he and his wife carefully read the prospectus and promotional materials provided by GD&L and made an independent evaluation of the investment's feasibility based on his knowledge of the container industry and their knowledge of taxation. Petitioner contacted others in the industry. Although no one petitioner spoke with was familiar with GD&L, he was able to confirm that GD&L was charging approximately market price for the containers they were purportedly selling. GD&L was a company that promoted and purported to sell marine-dry containers of the type used by ocean-going cargo vessels for the carriage of *648 dry cargo. The specific features of the GD&L investment plan and the assets petitioner believed he was purchasing are described in detail in Amsler v. Commissioner, T.C. Memo. 1993-289, Shortal v. Commissioner, T.C. Memo. 1992-560, and Weiler v. Commissioner, T.C. Memo. 1990-562. In short, the containers petitioner believed he was purchasing were nonexistent. The entire transaction was a sham. In 1985, petitioner decided to make his own investment in GD&L. By that time, petitioner, who had inherited his mother-in-law's investment in GD&L, had been involved with GD&L for almost 3 years. He had been receiving for nearly 3 years communications from GD&L: Year-end reports, tax information, confirmations, and other materials. On the few occasions when petitioner personally contacted GD&L, he was impressed with their professionalism and prompt responses. Based on petitioner's experience with GD&L and his knowledge of the container industry, petitioner concluded that GD&L was a legitimate, prudent investment. On June 7, 1985, petitioner signed an agreement for the purchase and lease of 10 *649 40-foot dry containers and 30 20-foot dry containers. Petitioner paid $ 5,000 in cash for containers having a reported value of $ 100,000. The balance, $ 95,000, was to be a loan from the Co-Op Investment Bank, Ltd., yet no note was ever signed by petitioner. Petitioner now agrees that the containers never existed. Consequently, he concedes that he is not entitled to the investment tax credits and Schedule C losses associated with the investment. The only issue remaining regarding GD&L is whether petitioner is liable for additions to tax for negligence. Section 6653(a) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is the failure to use due care or to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). *650 Respondent's determination of negligence is presumed to be correct, and petitioner bears the burden of proving otherwise. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner contends that he was not negligent in investing in GD&L. He argues that he is a container industry expert and an experienced investor, and that before investing in GD&L he made a thorough and comprehensive evaluation of the merits of the investment. We disagree. We do not find that when petitioner invested in GD&L he was either a container industry expert or an experienced investor. Petitioner's contact with the container industry was when he was an employee of Kaiser Aluminum, which was 13 years before he became involved in GD&L. There is no evidence that in 1982 he was familiar with the then current container leasing or industry manufacturing practices. If petitioner were an investment expert, we do not believe he would have made such an investment. See Shortal v. Commissioner, supra.[2] *651 The only purpose of the GD&L investment was the avoidance or evasion of Federal income tax. Shortal v. Commissioner, supra. A reasonable and ordinarily prudent investor, to say nothing of an investor as knowledgeable as petitioner claims to be, would have questioned an investment that allowed a taxpayer to claim tax benefits computed on an investment of $ 100,000 when the investor only paid $ 5,000 and was not required to sign a promissory note for the balance.
Moreover, the failure of petitioner to make a meaningful investigation beyond the promotional materials supplied by the sales people or to consult independent advisers is not reasonable or in keeping with the standard of the reasonable and ordinarily prudent investor. LaVerne, et al. v. Commissioner, 94 T.C. 637, 652-653 (1990), *652 affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Weiler v. Commissioner, supra. Here, petitioner did not conduct a meaningful investigation of GD&L before making his investment. Petitioner based his decision to invest on his prior experiences with GD&L, which up to that point had been the receipt of bogus communications, a few phone conversations, and his earlier reading of the prospectus and promotional materials. In addition, petitioner did not examine any GD&L containers -- not when he invested or when he encouraged his mother-in-law to invest. Petitioner did not know the identity of alleged lessees of his containers. Petitioner did not review any of the leases. On the one occasion when petitioner did ask to review the GD&L leases and GD&L refused, he felt that GD&L was acting consistent with industry practice. Petitioner stated he was aware that the management fee charged by GD&L was excessive, but he did not attempt to negotiate a lower fee. Petitioner purports to be an *653 industry expert, yet he was unaware of the only two recognized worldwide container registers. Petitioner did register his containers, but that was with GD&L's own registry system. Petitioner never insured his containers or determined whether GD&L was insuring them. He did not know the name of the manufacturer of the containers he purportedly purchased. A prudent investor that had made an $ 100,000 purchase of property would have done more. Based on the record before us, we must conclude that petitioner is liable for the additions to tax for negligence. The next issue for decision is whether petitioner is entitled to Schedule C deductions beyond those allowed by respondent relating to an investment in a wind turbine during the years 1985 and 1986. Specifically, petitioner contends that he is entitled to four deductions relating to the wind turbine: property taxes paid during the year 1985, and legal, telephone, and travel expenses paid during the year 1986. [3]
*654 Section 162 provides for a deduction of ordinary and necessary expenses incurred in carrying on a trade or business. Deductions are strictly a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). The taxpayer has the burden of proving his entitlement to all deductions claimed. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, a taxpayer is required to substantiate claimed deductions by maintaining the records needed to establish his entitlement to such deductions. Sec. 6001; Sec. 1.6001-1(a), Income Tax Regs.
Petitioner claims that he is entitled to a property tax deduction for the year 1985, but he has no record of a 1985 property tax bill or payment of such a bill. Petitioner claims that he is entitled to a deduction of $ 47 in legal expenses, but he cannot recall what the legal expense related to. Petitioner claims that he is entitled to a deduction for $ 45 in telephone expenses, but admits the $ 45 is based on an "educated guess" of the cost of his business calls. Petitioner claims to be entitled to a deduction for $ 60 in travel expenses, yet he cannot say how *655 he arrived at that amount. Petitioner has not submitted any evidence corroborating his entitlement to such deductions. We are not bound to accept petitioner's unsubstantiated, unverified, undocumented testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Accordingly, we find that petitioner has not met his burden of proof and therefore is not entitled to any deduction in excess of those allowed by respondent. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Sec. 6653(a)(1)(A) and (B) for 1986.↩
2. Respondent determined in the alternative, that if petitioner was found not to be liable for the sec. 6659 addition to tax, petitioner was liable for the addition to tax imposed pursuant to sec. 6661.↩
3. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
2. In Shortal v. Commissioner, T.C. Memo. 1992-560↩, the Court said of petitioner: "He was not a tax expert. Nor does it appear that he was an expert in the investment field." We agree.
3. We are assuming petitioner is not challenging respondent's determination relating to his deduction for dues expenses because he has not addressed this issue on brief.↩