T.C. Memo. 1998-265


UNITED STATES TAX COURT


BARRY JOHN SERGEANT AND CHRISTINE M. SERGEANT, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13646-96.                    Filed July 20, 1998.


Barry John Sergeant and Christine M. Sergeant, pro sese.

<u>Michael P. Breton</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following deficiencies in, and penalty on, petitioners' Federal income taxes:

| Year | Deficiency | Penalty Sec. 6662 |
|------|-----------|-------------------|
| 1993 | $2,852    | --                |
| 1994 | 10,402    | $2,080            |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are:  (1) Whether petitioners are entitled to charitable contribution deductions in excess of the amount allowed by respondent; and (2) whether petitioners are liable for the penalty for a substantial valuation misstatement for 1994.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in Rowayton, Connecticut, at the time they filed their petition.

As of the time of trial, Donald Miller (Mr. Miller), the owner and operator of Miller Yacht Sales, Inc. (Miller Yacht), had been in the business of selling boats for 35 years.  In November 1987, Mr. Miller sold the boat in issue in this case--a 1967 42-foot Trojan Motor Yacht with a wooden hull, gasoline-powered engines, and no fly bridge (the boat)--to a third party for $32,000 plus a trade-in valued at approximately $5,000.  At the time of this sale, the boat was in above-average condition. In 1992, Mid-Atlantic Bank repossessed the boat from the third party and sold it back to Miller Yacht for $3,750.  On February 13, 1992, Mr. Sergeant purchased the boat from Miller Yacht for

$8,500. By the time Mr. Sergeant purchased the boat, it had deteriorated considerably and needed a lot of repairs.

Mr. Sergeant made repairs to the boat and attempted to sell it for between $60,000 and $82,500; however, he could not sell it. During this time, Mr. Sergeant carried $25,000 of property damage insurance policy on the boat.

Mr. Sergeant saw an advertisement in The Wall Street Journal soliciting boat donations to the Oceanus Institute, Inc., of Manset, Maine (Oceanus).[1] On August 12, 1993, Mr. Sergeant donated the boat to Oceanus. Twenty days after he donated the boat, Oceanus sold the boat for $4,000.[2]

On their 1993 Federal income tax return, petitioners claimed a gift made to charity, for the boat donation, in the amount of $75,100. However, they deducted only a portion of this amount due to limitations on charitable deductions. On their 1994 Federal income tax return, petitioners deducted the charitable contribution carryover from 1993. Petitioners attached an appraisal of the boat prepared by Gregory Hurt (the Hurt appraisal) to their 1993 Federal income tax return.[3] Petitioners based their deduction for the boat on the Hurt appraisal.

---

[1] Oceanus is a charitable organization recognized under sec. 501(c)(3).

[2] It appears that Oceanus damaged the boat prior to this sale.

[3] Mr. Hurt based his appraisal on figures contained in the BUC Guide, 61st edition.

The National Automobile Dealers Association Large Boat Appraisal Guide (NADA Guide) and the BUC Guide are boat valuation guides. The NADA Guide, for May through August 1994, and the BUC Guide, 64th Edition, for Summer 1994, listed the following value ranges for a 1967 42-foot Sea Voyager Motor Yacht[4] with inboard gasoline engines and a wooden hull:[5]

|            | Low      | Average  | High     |
|------------|----------|----------|----------|
| NADA Guide | $22,750  | $27,000  | $31,200  |
| BUC Guide  | 56,200   | --       | $61,800  |

Respondent determined that the fair market value of the boat at the time of its contribution was $22,125. In 1998, Mr. Miller sold a 1968 42-foot Chris Craft with a wooden hull, gasoline engines, and no fly bridge--a make and model similar to the boat--for $10,000.

OPINION

Fair Market Value

Section 170(a)(1) provides a deduction for charitable contributions made to qualified entities during the taxable year. "If a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution". Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is the price at

---

[4] This boat is comparable to petitioners' boat.

[5] The parties presented evidence regarding fair market value according to both guides only for 1994.

which the property would change hands between a willing buyer and a willing seller, both having a reasonable knowledge of relevant facts and neither being under any compulsion to buy or sell. Sec. 1.170A-1(c)(2), Income Tax Regs. Fair market value is a question of fact to be determined from the entire record. Zmuda v. Commissioner, 79 T.C. 714, 726 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Estate of DeBie v. Commissioner, 56 T.C. 876, 894 (1971). The Commissioner's determination of the property's fair market value is presumed to be correct, and petitioners bear the burden of proving a higher value. Rule 142(a).

It is undisputed that Oceanus is a qualified entity. Petitioners attempted to satisfy their burden of proving the boat's fair market value principally through Mr. Sergeant's testimony and the Hurt appraisal. We do not accept Mr. Sergeant's unsubstantiated testimony regarding the boat. See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). The Hurt appraisal based its value for the boat on the BUC Guide. We do not place much weight on this appraisal. Mr. Miller credibly testified that the BUC Guide inflates the value of used boats and that the NADA Guide more accurately reflects their fair market value. We note that many banks, for financing purposes, no longer use the BUC Guide and instead use the NADA Guide. Furthermore, petitioners did not offer Mr. Hurt as a witness at trial, and respondent and the Court did not have the opportunity to question him regarding the conclusions set

forth in the Hurt appraisal.  Additionally, the evidence presented regarding comparable sales does not support petitioners' claimed fair market value of the boat.

Based on the evidence presented at trial, we conclude that petitioners are not entitled to a deduction for the boat in excess of the amount determined by respondent.

Substantial Valuation Misstatement

Taxpayers are liable for a penalty equal to 20 percent of the portion of the underpayment of tax attributable to a substantial valuation misstatement.  Sec. 6662(a), (b)(3). Section 6662(e)(1)(A) provides that there is a substantial valuation misstatement if the value of any property claimed on any tax return imposed by chapter 1 is 200 percent or more of the amount determined to be the correct value.[6]  The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if the taxpayer shows that there was reasonable cause for such portion and that the taxpayer acted in good faith. Sec. 6664(c)(1).  Section 6664(c)(1), however, shall not apply in the case of any underpayment attributable to a substantial or gross valuation overstatement under chapter 1 with respect to any property contributed by the taxpayer for which a deduction was claimed under section 170 unless (1) the claimed value of the property was based on a "qualified appraisal" made by a

---

[6]  Sec. 6662(e)(2) provides an exception that is not applicable in the instant case.

"qualified appraiser", and (2) in addition to obtaining such appraisal, the taxpayer made a good faith investigation of the value of the contributed property.  Sec. 6664(c)(2) and (3). Qualified appraisers and qualified appraisals are defined under the regulations under section 170(a)(1).  Sec. 6664(c)(3).

First, among the information to be included on a qualified appraisal is the date (or expected date) of the contribution. See sec. 1.170A-13(c)(3)(ii)(C), Income Tax Regs.  The Hurt appraisal does not include the date or expected date of contribution of the boat to the donee.  Second, there is insufficient evidence to determine whether Mr. Hurt is a qualified appraiser.  See sec. 1.170A-13(c)(4), (c)(5), Income Tax Regs. (discussing what an appraisal summary is and the declarations required to be made by the preparer of the appraisal summary in order to qualify as a qualified appraiser).[7]  Last, there is no evidence that, in addition to obtaining the Hurt appraisal, petitioners made a good faith investigation of the value of the contributed property.  Thus, the reasonable cause exception of section 6664(c) does not apply.

The $75,100 claimed value of the boat exceeds 200 percent of the correct value (i.e., $22,125).  Petitioners, therefore, are liable for the penalty pursuant to section 6662 for a substantial valuation misstatement.

_____

[7]  An appraisal summary is not part of the record in this case.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.
