LYLE J. AND SHIRLEY M. FRALICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fralich v. Commissioner
Docket No. 1341-87
United States Tax Court
T.C. Memo 1995-257; 1995 Tax Ct. Memo LEXIS 258; 69 T.C.M. (CCH) 2875; June 13, 1995, Filed *258 Decision will be entered under Rule 155. For petitioners: Lois C. Blaesing and Chauncey W. Tuttle, Jr.
For respondent: Mary P. Hamilton, Paul Colleran, and William T. Hayes. DAWSON; WOLFE
DAWSON, WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion *259 996 F.2d 1216 (6th Cir. 1993). The facts of the underlying transaction in this case are substantially identical to those in the Provizer case. Through a second tier partnership, Efron Investors, Lyle J. Fralich (petitioner) invested in the Clearwater Group limited partnership (Clearwater), the same partnership considered in the Provizer case. Pursuant to petitioners' request at trial, this Court took judicial notice of our opinion in the Provizer case. In a notice of deficiency, respondent determined deficiencies in petitioners' joint 1978 and 1981 Federal income taxes in the amounts of $ 15,367 and $ 7,416, respectively, and additions to tax for those years under section 6659 for valuation overstatements in the amounts of $ 4,610 and $ 2,225, respectively, and determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c). [2] The deficiency for taxable year 1978 results from disallowance of investment tax credit carrybacks and business energy credit carrybacks from taxable year 1981. *260 In addition to the above deficiencies and additions to tax, in an amended answer, respondent asserted that petitioners were liable for additions to tax for 1978 and 1981 in the respective amounts of $ 768 and $ 371 under section 6653(a)(1) for negligence and under section 6653(a)(2) in amounts equal to 50 percent of the interest payable with respect to the portion of the underpayments attributable to negligence. In her opening brief, respondent asserted an addition to tax in the total amount of $ 5,790 that was calculated based upon an underpayment of taxes in the amount of $ 19,302 allegedly attributable to a valuation overstatement. We consider the section 6659 additions to tax adjusted to correspond to the amounts in dispute as set forth in respondent's opening brief and treat the limitation of the total additions to tax under section 6659 to $ 5,790 as a concession by respondent. The allocation of section 6659 additions to tax between 1978 and 1981 is a matter of computation involving matters not in dispute in this case. The pleadings are amended to conform to the proof pursuant to Rule 41(b). The issues for decision are: (1) Whether expert reports and testimony offered *261 by respondent are admissible into evidence; (2) whether petitioners are entitled to claimed deductions and tax credits with respect to Clearwater as passed through Efron Investors to petitioner Lyle J. Fralich; (3) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a) for 1978 and under section 6653(a)(1) and (2) for 1981; (4) whether petitioners are liable for additions to tax under section 6659 for an underpayment of tax attributable to valuation overstatement for 1978 and 1981; and (5) whether petitioners are liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Munster, Indiana, when their petition was filed. During 1981, petitioners were the managers and sole owners of three Shakey's Pizza franchises. Petitioners opened their first Shakey's Pizza restaurant in 1968. In 1981, petitioners opened their third Shakey's Pizza restaurant. In 1981, the gross receipts of petitioners' Shakey's Pizza enterprise were approximately *262 $ 3 million. Petitioners' gross income for 1981 from wages, interest, dividends, tax refunds, rental income, and miscellaneous income was in excess of $ 210,000. Although this amount was reduced for tax purposes by start-up expenditures for a new restaurant and limited partnership losses that were allowed by respondent, petitioners' 1981 adjusted gross income aside from matters here in dispute was still approximately $ 100,000. Consequently, in the absence of significant losses, deductions, or credits, they were subject to payment of Federal income taxes in substantial amounts. Petitioner is a limited partner in Efron Investors (EI), which is a limited partner in Clearwater. Clearwater is the same recycling partnership that we considered in Provizer v. Commissioner, supra. The underlying deficiency still in dispute in this case resulted from respondent's disallowance of claimed losses and tax credits that were passed through EI to petitioner.[3]
*263 Petitioners have stipulated substantially the same facts concerning the underlying transactions as we found in Provizer v. Commissioner, supra.[4] Those facts may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $ 5,886,000 ($ 981,000 each). ECI Corp., in turn, resold the recyclers to F & G Corp. for $ 6,976,000 ($ 1,162,666 each). F & G Corp. then leased the recyclers to Clearwater, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI. All of the monthly payments required among the entities in the above transactions offset each other. These transactions were done simultaneously. We refer to these transactions collectively as the Clearwater transaction. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $ 50,000. *264 PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC based on the quality and amount of recycled scrap. In 1981, petitioner acquired a limited partnership interest in EI, and EI acquired a limited partnership interest in Clearwater. EI is an Indiana Limited Partnership that was formed in May of 1981 by Morton L. Efron (Efron) as the general partner and Real Estate Financial Corp. (REFC) as the initial limited partner. Fred Gordon (Gordon) is the president of REFC, which is owned by members of Gordon's family. EI was formed to acquire limited partnership interests in an office building in Buffalo, New York (the office building), and a shopping center in Haslett, Michigan (the shopping center). In contemplation of these ventures, EI prepared a private placement memorandum (the original offering memorandum) and distributed it to potential limited partners. At some time in late 1981, EI abandoned the contemplated investment in the shopping center and substituted limited partnership interests *265 in Clearwater and a K-Mart shopping center in Swansea, Massachusetts (the K-Mart investment). The revised investment objectives were presented in a revised offering memorandum (the revised offering memorandum) dated December 14, 1981. The revised offering memorandum indicated that EI intended to invest in 100 percent of the limited partnership interests in the office building (10 units), 43.75 percent of the limited partnership interests in Clearwater (7 units), and 15.625 percent of the limited partnership interests in the K-Mart investment (2 1/2 units). Potential EI limited partners were informed of the change in EI's investment objectives through informal conversations and the revised offering memorandum. Petitioner became aware of the change in EI's investment objectives in late 1981. MFA Corp. (MFA) is the ministerial agent for EI. Efron owns 50 percent of the stock of MFA and REFC owns the remaining 50 percent. The revised offering memorandum provides that Efron, as general partner of EI, and MFA, as the ministerial agent for EI, will receive substantial fees, compensation, and profits from EI. The contemplated payments to MFA include: (1) $ 100,000 for supervisory *266 management of the office building and ministerial fees; (2) $ 100,000-$ 125,000 as loan commitment fees; (3) $ 25,000 for note collection guarantees; and (4) a maximum of $ 100,750 in investment advisory fees. In addition, MFA was also the ministerial agent for the office building limited partnership and, according to the revised offering memorandum, received substantial payments in that capacity. Efron was the general partner of EI. In addition, Efron owned limited partnership interests in EI through Efron and Efron Real Estate, a partnership owned by Efron and his wife, and AMBI Real Estate, a partnership owned by Efron and his sister. EI was the first partnership for which Efron served as a general partner. Efron organized EI so that he could earn legal fees and fees for managing the partnership. He received compensation and fees as the general partner of EI and as a 50-percent shareholder of MFA. After EI abandoned the investment in the shopping center, Efron learned of the Clearwater transaction from Gordon. In 1981 Gordon was counsel to EI, to Efron as the general partner of EI, to Efron personally, and to MFA. He and Efron have known each other since meeting at the *267 University of Michigan in 1955. In the early 1960's Efron and Gordon began investing together in the stock market, real estate, business loans, and other investments. Gordon is an attorney who holds a master's degree in business administration and at one time was employed by the Internal Revenue Service. Prior to the date of the Clearwater private placement offering, Gordon had experience involving the evaluation of tax shelters. Gordon was paid a fee in the amount of 10 percent of some investments he guided to Clearwater; however he did not receive directly a fee from Clearwater for the EI investments. Efron was aware that Gordon received commissions from the sale of some units in recycling ventures. [5] Gordon recommended investing in the Clearwater offering to the investors in EI, as well as to some of Gordon's other clients. *268 In 1981, petitioner subscribed to purchase 1/2 of a limited partnership unit ($ 50,000) in EI. He subscribed to purchase a 1/4 unit on December 8, 1981, and subscribed to purchase an additional 1/4 unit on December 15, 1981. He acquired his interest in EI in exchange for a cash payment in the amount of $ 20,162.50 and promissory notes bearing interest at the rate of 11 percent per year with payments due in the amounts of $ 20,902.50 and $ 8,035 on January 15, 1982, and January 15, 1983, respectively. Petitioner acquired a 3.194-percent limited partnership interest in EI, and EI acquired a 43.313-percent limited partnership interest in Clearwater. As a result of the pass through from Clearwater and EI, on their 1981 Federal income tax return petitioners deducted an operating loss in the amount of $ 8,944 and claimed an investment tax credit in the amount of $ 9,651 and a business energy credit in the amount of $ 9,651 for the recyclers. Respondent disallowed petitioners' claimed deductions and credits related to petitioner's entire investment in EI for taxable year 1981. Although the notice of deficiency states that respondent disallowed only the losses passed through both Clearwater *269 and EI to petitioner, in fact, respondent disallowed all of the deductions and losses associated with petitioner's investment in EI. On their 1981 Federal income tax return, petitioners claimed a tentative investment tax credit in the amount of $ 40,540, $ 9,651 of which was attributable to petitioner's investment in Clearwater through EI. Petitioners used $ 6,100 of that credit on their 1981 Federal income tax return and carried back the unused portion to 1978 and 1979, $ 21,557 and $ 12,883, respectively. In an amended return for 1981, petitioners also claimed a business energy credit in the amount of $ 9,651 with respect to petitioner's investment in Clearwater through EI. Petitioners carried back the entire claimed business energy credit to 1979. [6]
Prior to issuance of the notice of deficiency for taxable years 1978 and 1981, *270 the parties agreed that petitioners were entitled to carry back unused investment tax credits in the amounts of $ 6,190 and $ 12,883 to 1978 and 1979, respectively. Respondent disallowed the credits claimed with respect to Clearwater; i.e, the claimed business energy credit in the amount of $ 9,651 and $ 9,651 of the claimed investment tax credit. In so doing, respondent determined that $ 15,367 of those credits were utilized in taxable year 1978 and $ 3,935 of those credits were utilized in taxable year 1981. In 1981, petitioner learned of EI and the Clearwater transaction from Lawrence Reister (Reister). In 1981, Reister was a certified financial adviser and manager of a John Hancock Insurance agency. Petitioners have purchased numerous insurance policies from Reister and have had a business association with him since 1967. Reister acted as petitioner's offeree representative with respect to the EI offering. Petitioner received a bachelor of science degree in marketing in 1957 from the University of North Dakota. Petitioner Shirley M. Fralich is a high school graduate. In 1981, petitioners' business occupation was the managing and ownership of three Shakey's Pizza restaurants. *271 Petitioners do not have any education or formal training in investments. Petitioners do not have any education or work experience in plastics recycling or plastics materials. Petitioners did not independently investigate the Sentinel recyclers. Petitioners did not see a Sentinel recycler or any other type of plastic recycler prior to participating in the recycling ventures. OPINION In Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 926 F.2d 1216 (6th Cir. 1993), a test case involving the Clearwater transaction and another tier partnership, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $ 50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). *272 In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers. Although petitioners have not agreed to be bound by the Provizer opinion, they have stipulated that petitioner's investment in the Sentinel EPE recyclers was similar to the investment described in Provizer v. Commissioner, supra, and, pursuant to their request, we have taken judicial notice of our opinion in the Provizer case. Petitioner invested in EI, a tier partnership that invested in Clearwater. The underlying transaction in this case (the Clearwater transaction), and the Sentinel EPE recyclers considered in this case, are the same transaction and machines considered in Provizer v. Commissioner, supra.
Issue 1: Admissibility of Expert Reports and Testimony
Before addressing the substantive issues in this case, we resolve an evidentiary issue. At trial, respondent offered in evidence the expert opinions and testimony of Steven Grossman (Grossman) and Richard Lindstrom (Lindstrom). At trial and in their *273 reply brief, petitioners object to the admissibility of the testimony and reports. The expert reports and testimony of Grossman and Lindstrom are identical to the testimony and reports in Fine v. Commissioner, T.C. Memo. 1995-222. In addition, petitioners' arguments with respect to the admissibility of the expert testimony and reports are identical to the arguments made in the Fine case. For discussions of the reports, see Fine v. Commissioner, supra, and Provizer v. Commissioner, supra.
For reasons set forth in Fine v. Commissioner, supra, we hold that the reports and testimony of Grossman and Lindstrom are relevant and admissible and that Grossman and Lindstrom are experts in the fields of plastics, engineering, and technical information. We do not, however, accept Grossman or Lindstrom as experts with respect to the ability of the average person, who has not had extensive education in science and engineering, to conduct technical research, and we have limited our consideration of their reports and testimony to the areas of their expertise. *274 We also hold that Grossman's report meets the requirements of Rule 143(f). Issue 2: Deductions and Tax Credits With Respect to EI and Clearwater
On their joint 1981 Federal income tax return as amended, petitioners claimed the following with respect to petitioner's investment in EI: (1) Deductions in the amount of $ 9,853; (2) an investment tax credit in the amount of $ 9,651; and (3) a business energy credit in the amount of $ 9,651. [7] Of the deductions claimed with respect to petitioner's investment in EI, $ 8,944 was attributable to EI's investment in Clearwater. [8] All the credits claimed with respect to EI were attributable to EI's investment in Clearwater. Respondent disallowed the deductions and tax credits claimed with respect to petitioner's investment in EI in their entirety. *275 The underlying transaction with respect to Clearwater in this case is substantially identical in all respects to the transaction in Provizer v. Commissioner, T.C. Memo. 1992-177. The parties have stipulated the facts concerning the deficiency essentially as set forth in our Provizer opinion. Based on this record, we hold that the Clearwater transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Accordingly, we sustain respondent's disallowance of the deductions and credits claimed with respect to EI's investment in Clearwater.[9] Moreover, we note that petitioners have stated their concession of this issue on brief. The record plainly supports respondent's disallowance of the deductions and credits claimed with respect to Clearwater regardless of such concession. For a detailed discussion of the facts and the applicable law, see Provizer v. Commissioner, supra.
*276 Issue 3: Sec. 6653(a) Negligence
In her first amendment to answer, respondent asserted that petitioners were liable for the negligence additions to tax under section 6653(a) for 1978 and 1981. Because these additions to tax were raised for the first time in respondent's amendment to answer, respondent bears the burden of proof on this issue. Rule 142(a); Vecchio v. Commissioner, 103 T.C. 170, 196 (1994). Section 6653(a) for taxable year 1978 and section 6653(a)(1) for taxable year 1981 provide for an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) for taxable year 1981 provides for an addition to tax equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection *277 with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). Petitioner contends that he was reasonable in claiming deductions and credits with respect to EI's investment in Clearwater. To support his contention, petitioner alleges the following: (1) That claiming the deductions and credits with respect to EI's investment in Clearwater was reasonable in light of the supposed oil crisis in the United States in 1981; and (2) that in claiming the deductions and credits, petitioner specifically relied upon Reister and Donald Wilson (his accountant). When petitioners claimed the disallowed deductions and tax credits, they had little, if any, knowledge of the plastics or recycling industries and no engineering or technical knowledge. Petitioners did not independently investigate the Sentinel EPE recyclers. In fact, petitioner did not request, receive, or read a copy of the Clearwater offering memorandum, and he claims that he merely skimmed the revised offering memorandum with Reister. At trial petitioner could remember almost nothing *278 about the Clearwater transaction, the equipment involved, the parties involved, the amount of lease payments paid by Clearwater, the amount of royalty payments projected to be received by Clearwater, or the value of the recyclers. He testified he "didn't even know what the recycling part [of the EI investment] really was about". Although petitioner testified that he believed that Clearwater was going to generate income from leasing the equipment, he was unsure as to precisely how EI's investment in Clearwater was supposed to generate income. Petitioner argues, in general terms, that because of the media coverage of a supposed oil or energy crisis in the United States during 1981, he believed that an investment in recycling had good economic potential. He testified that he believed that the price of plastics would increase with the price of oil because plastics were oil derivatives. Petitioner, however, was quite candid in expressing his lack of knowledge concerning recycling and plastics. Petitioner was unaware of precisely how Clearwater was supposed to generate income. We find petitioner's vague, general claims concerning the so-called oil crisis to be without merit. Petitioners' *279 reliance on Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994), is misplaced. The facts in the Krause case are distinctly different from the facts of this case. In the Krause case, the taxpayers invested in limited partnerships whose investment objectives concerned enhanced oil recovery (EOR) technology. The Krause opinion notes that during the late 1970's and early 1980's the Federal Government adopted specific programs to aid research and development of EOR technology. Id. at 135-136. In holding that the taxpayers in the Krause case were not liable for the negligence-related additions to tax, this Court noted that one of the Government's expert witnesses acknowledged that "investors may have been significantly and reasonably influenced by the energy price hysteria that existed in the late 1970's and early 1980's to invest in EOR technology." Id. at 177. In the present case, however, one of respondent's experts, Grossman, noted that the price of plastics materials is not *280 directly proportional to the price of oil, that less than 10 percent of crude oil is utilized for making plastics materials, and that studies have shown that "a 300% increase in crude oil prices results in only a 30 to 40% increase in the cost of plastic products." While EOR was, according to our Krause opinion, in the forefront of national policy and the media during the late 1970's and early 1980's, there is no showing in this record that the so-called energy crisis would provide a reasonable basis for investing in recycling of polyethylene. Moreover, the taxpayers in the Krause opinion were experienced in or investigated EOR technology specifically. One of the taxpayers in the Krause case undertook significant investigation of the proposed investment including researching EOR technology. The other taxpayer was a geological and mining engineer whose work included research of oil recovery methods and who hired an independent geologic engineer to review the offering materials. Id. at 166. In the present case, petitioners were not experienced or educated in plastics recycling or plastics materials. They did not independently investigate *281 the Sentinel recyclers, and they did not hire an expert in plastics to evaluate the Clearwater transaction. We consider petitioners' arguments with respect to the Krause case inapplicable. Also, during 1980 and 1981, in addition to the media coverage of the "oil crisis", there was "extensive continuing press coverage of questionable tax shelter plans." Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). On their 1981 Federal income tax return alone, petitioners claimed investment tax and business energy credits related to Clearwater totaling $ 19,302, while petitioner's investment in Clearwater through EI was less than $ 11,500. [10] Therefore, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, petitioners never had any money in the [Clearwater] deal." In light of the large tax benefits projected in the offering memorandum and petitioner's admitted observation of the media, we conclude that further investigation of the investment clearly was mandated. A reasonably prudent person would have asked *282 a qualified independent tax adviser if this windfall were not too good to be true. McCrary v. Commissioner, 92 T.C. 827, 850 (1989). In fact, petitioner argues that he consulted qualified advisers and relied upon them in claiming the disallowed losses and tax credits. Petitioner argues that his reliance on the advice of Reister and Donald Wilson (Wilson) insulates him from the negligence-related additions to tax. Under some circumstances a taxpayer may avoid liability for additions to tax for negligence under section 6653(a) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), *283 affd. 501 U.S. 868 (1991). Such circumstances are not present in this case. Moreover, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447. *284 The record does not show, and petitioners do not seriously contend, that either Reister or Wilson possessed any special qualifications or professional skills in the recycling or plastics industries. Petitioner does not suggest that Reister or Wilson had any peculiar or specialized knowledge of the Clearwater transaction beyond that of any financial adviser or accountant who had read the prospectus. In addition, none of the persons allegedly relied upon by petitioner hired anyone with plastics or recycling expertise to evaluate the Clearwater transaction. Petitioner first became aware of EI through Reister. Petitioner contends that he relied on Reister in making his investment in EI and in claiming the associated tax deductions and credits. Reister acted as petitioner's offeree representative with respect to the EI investment. Reister was a certified financial adviser and had sold petitioners numerous insurance policies. Petitioners began purchasing investments through Reister in approximately 1981 and consequently, did not have a long history of purchasing investments through him prior to the EI transaction in 1981. Petitioner testified that in November of 1981 Reister approached *285 him concerning the EI investment and that, although he was not interested in investing at that time, Reister persisted in recommending the investment. Thereafter, in December of 1981, petitioner invested in EI. During 1981 petitioner spoke with Reister concerning the initial EI offering. Petitioner testified that at that time Reister explained the EI offering to him and told him that his investment in EI would be a small limited interest with no managerial duties or time commitment. When the change in EI's investment objectives occurred, petitioner received a copy of the revised offering memorandum. Upon receipt of the revised offering memorandum, petitioner reviewed it with Reister for approximately 30 minutes. Petitioner testified that at that time Reister advised him that recycling made economic sense because of the so-called oil crisis. The record is devoid of any further details concerning the advice petitioner received from Reister after EI's investment objectives were changed to include an investment in Clearwater. Although petitioner did not pay a fee directly to Reister, he testified that he assumed that Reister was receiving a commission with respect to petitioner's *286 investment in EI. The record with respect to the actual payment of commissions on this investment is inconclusive. See supra note 5. Despite petitioner's contention that he relied upon Reister in making the investment in EI, petitioner testified that he sought additional advice with respect to the EI offering memoranda from his accountant, Wilson. Petitioner explained his motivation in seeking Wilson's advice as follows: I always feel like whoever's selling me something might not be totally unbiased if they're making some money off it. So I would take it to my accountant who was totally unbiased and let him decide * * * to see if what [Reister] is saying is actually true and I'm not going to get stuck.
In our view, petitioner's purported reliance on Reister was not reasonable. Petitioner considered Reister a compensated salesman who had been persistent in his efforts to sell the EI deal. Petitioner's own testimony demonstrates that in this matter he did not consider the salesman's pitch a reliable basis for making the purchase. Petitioners will not be relieved of the negligence-related additions to tax on the basis of their current purported reliance on Reister. *287 Petitioner also contends that he relied on Wilson in investing in EI and in claiming the disallowed deductions and credits and that he should be relieved of the negligence-related additions to tax under section 6653(a) because of this reliance. Wilson is a certified public accountant and a member of the accounting firm Homer, Wilson & Company, formerly Russell Homer & Company (the accounting firm). Since 1967, the accounting firm has been performing all of petitioners' accounting work with respect to their Shakey's Pizza franchises. Petitioner took the initial offering memorandum to Wilson. Wilson testified that he reviewed that offering memorandum and recommended that petitioner invest in EI because EI was investing strictly in real estate. Thereafter, petitioner received the revised offering memorandum in the mail and took it to Wilson. Wilson reviewed the revised offering memorandum. Wilson did no outside investigation of EI or Clearwater. He did not request, receive, or review a copy of the Clearwater offering memorandum. Although he did not prepare a report with respect to the revised offering memorandum or verify the projections in the revised offering memorandum, *288 Wilson did not change his recommendation that petitioner invest in EI. Petitioner testified that Wilson was not concerned by the change in EI's investments. Wilson testified that he believed that EI's Clearwater investment had good economic potential. Yet, he did not investigate or know the material processed through the recyclers, the price of resin, or the name or price of the equipment leased by Clearwater. Wilson testified that he believed that EI was a good investment because of the real estate portion of the investment. He testified that the recycling part of the investment was "an unknown". Petitioners do not seriously contend that Wilson possessed the requisite expertise in recycling or the plastics industry to enable him properly to evaluate the merits of the Clearwater transaction. Petitioner's purported reliance on Wilson was not reasonable. In our view, petitioner's purported reliance on Reister and Wilson was not reasonable, in good faith, and based on full disclosure. Accordingly, we hold that petitioners are not entitled to relief from the negligence-related additions to tax under section 6653(a) because of their alleged reliance on professional advice. Petitioners' *289 reliance on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, is misplaced. The facts in the Heasley case are distinctly different from the facts of this case. In the Heasley case the taxpayers were not educated beyond high school and had limited investment experience, while in the instant case petitioner was a financially successful, sophisticated, educated, experienced business owner who had made numerous and varied investments. The taxpayers in the Heasley case actively monitored their investment and, as the Fifth Circuit Court of Appeals stated, intended to profit from the investment. We cannot reach similar conclusions in the instant case. Although petitioner testified that he intended to profit from EI's investment in Clearwater, he has failed to provide evidence of any effort to monitor the investment or reliable evidence of any profit objective independent of tax savings. We consider petitioners' arguments with respect to the Heasley case inapplicable. Petitioner entered into the EI investment without any knowledge or background with respect to plastics or recycling *290 and without seeking the advice of anyone who had such knowledge. Petitioner did not examine any Sentinel EPE recyclers prior to investing in EI, and he did not seek the advice of an independent third party concerning the machines' values. Through his investment in EI, petitioner paid less than $ 11,500 to Clearwater and claimed a tax deduction of $ 8,944 and tax credits in the amount of $ 19,302 for the first year of the investment alone. Under the circumstances of this case, petitioner should have known better than to claim the large deductions and tax credits with respect to Clearwater on petitioners' 1981 Federal income tax return. We conclude that petitioners were negligent in claiming the deductions and credits with respect to EI's investment in Clearwater on their 1981 Federal income tax return. We hold, upon consideration of the entire record, that petitioners are liable for the negligence-related additions to tax under the provisions of section 6653(a)(1) and (2) for 1981. Respondent is sustained on this issue. Issue 4. Sec. 6659 Valuation Overstatement
A graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds *291 $ 1,000 and is attributable to a valuation overstatement. Sec. 6659(a), (d). A valuation overstatement exists if the fair market value (or adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount. Sec. 6659(c). If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment. Sec. 6659(b). The underlying facts of this case with respect to this issue are substantially the same as those in Fine v. Commissioner, T.C. Memo. 1995-222. In addition, petitioners' arguments with respect to this issue are essentially identical to the arguments made in the Fine case. For reasons set forth in the Fine opinion, we hold that petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1978 and 1981. Respondent calculated the section 6659 addition to tax based upon an underpayment in taxes in the amount of $ 19,302. [11] On their 1981 Federal income tax return, as amended, petitioners claimed investment tax and business energy credits *292 with respect to Clearwater in the amount of $ 19,302. Petitioners are liable for section 6659 additions to tax at the rate of 30 percent of any underpayment of taxes for 1981 or, pursuant to carryback provisions, for 1978 that equals or exceeds $ 1,000 and is attributable to the investment tax credit and business energy credit claimed with respect to EI and Clearwater. Issue 5: Sec. 6621(c) Tax-Motivated Transactions
In the notice of deficiency, respondent determined that interest on deficiencies accruing after December 31, 1984, would be calculated under section 6621(c). The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions. An underpayment is substantial if it exceeds *293 $ 1,000. Sec. 6621(c)(2). The underlying facts of this case with respect to this issue are substantially the same as those in Fine v. Commissioner, supra. In addition, petitioners' arguments on brief with respect to this issue are verbatim copies of the arguments in the taxpayers' briefs in the Fine case. For reasons set forth in the Fine opinion, we hold that respondent's determination as to the applicable interest rate for deficiencies attributable to tax-motivated transactions is sustained, and the increased rate of interest applies for the taxable years in issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax years at issue, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The notice of deficiency refers to sec. 6621(d). This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744 and repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2399, effective for tax returns due after Dec. 31, 1989 (sec. 7721(d) of the Act). The repeal does not affect the instant cases. For simplicity, we will refer to this section as sec. 6621(c). The annual rate of interest under sec. 6621(c) for interest accruing after Dec. 31, 1984, equals 120 percent of the interest payable under sec. 6601↩ with respect to any substantial underpayment attributable to tax-motivated transactions.
3. In addition to disallowing the losses and credits claimed with respect to petitioner's investment in EI, in the notice of deficiency respondent determined other adjustments to petitioners' 1981 Federal income tax. The other adjustments were agreed upon prior to issuance of the notice of deficiency.↩
4. The parties did not stipulate certain facts concerning the Provizers, facts regarding the expert opinions, and other matters that we consider of minimal significance. Although the parties did not stipulate our findings regarding the expert opinions, they stipulated our ultimate finding of fact concerning the fair market value of the recyclers during 1981.↩
5. The Clearwater offering memorandum states that the partnership will pay sales commissions and fees to offeree representatives in an amount equal to 10 percent of the price paid by the investor represented by such person. The offering memorandum further states that if such fees are not paid "they will either be retained by the general partner as additional compensation if permitted by applicable state law, or applied in reduction of the subscription price." The Efron Investors Schedule K-1 for 1981 shows that EI paid full price, $ 350,000, for its 7 units of Clearwater, so the 10-percent commission was not applied to reduce the subscription price. Gordon specifically stated that in the case of EI he did not directly receive the sales commission. Efron expressed doubt that he individually had been an offeree representative in connection with Clearwater or any other transaction. There are suggestions that the commission might have been paid to MFA or offeree representatives of individual investors, but the record on this subject is inconclusive. Lawrence H. Reister (Reister) was petitioner's offeree representative with respect to the EI investment.↩
6. Petitioners claimed the investment tax credit carryback and the business energy credit carryback on Forms 1045, Applications for Tentative Refund, for taxable years 1978 and 1979.↩
7. Although petitioners did not utilize all of their claimed investment tax and business energy credits on their 1981 Federal income tax return, they claimed carrybacks for the remainder of the credits.↩
8. Calculated as follows: ↩
EI's Reported Loss From
Petitioner's Interest
Clearwater
in EI
$ 280,040
X
3.194%
=
$ 8,944
9. In the notice of deficiency respondent disallowed all deductions claimed on petitioners' 1981 return with respect to EI. We sustain only respondent's disallowance of the losses and credits claimed with respect to EI's investment in Clearwater.↩
10. Calculated as follows: ↩
EI's Investment in Clearwater
Petitioner's Share of EI
$ 350,000
X
3.194%
=
$ 11,179
EI's Investment in Clearwater
$ 350,000
X
Petitioner's Investment
=
$ 11,290
EI's Total Investment
$ 50,000
$ 1,550,000
11. The addition to tax under sec. 6659 equals 30% of the underpayment of taxes attributable to a valuation overstatement if the claimed valuation exceeds 250% of the correct value. Sec. 6659(b)↩.