T.C. Summary Opinion 2007-38

UNITED STATES TAX COURT

CHRISTIANA STAMOULIS, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18151-04S.              Filed March 8, 2007.

Ronny Buni, for petitioner.

Parker F. Taylor, for respondent.

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for 2002, and Rule references are to the

Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Petitioner, whose adjusted gross income for 2002 was less than $115,000, claimed a $55,764 charitable contribution deduction on her 2002 Federal income tax return.  As a result of the disallowance of that deduction, respondent determined a $14,649[1] deficiency in petitioner's 2002 Federal income tax and imposed a $2,930 accuracy-related penalty pursuant to section 6662(a).

The issues in dispute are as follows:  (1) Whether petitioner is entitled to a charitable contribution deduction in excess of the amount now allowed by respondent and (2) whether the underpayment of tax required to be shown on petitioner's 2002 Federal income tax return is due to negligence or intentional disregard of rules or regulations.

### Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioner resided in New York, New York.

---

[1]  Dollar amounts are rounded.

Starting in June 2000, and at all relevant times, petitioner was employed as an investment banker with Goldman Sachs in New York, New York. Petitioner's 2002 return shows her adjusted gross income as $114,819. According to petitioner, her income for that year represented a temporary, albeit significant drop in her usual annual income due to the status of the economy at the time.[2]

Petitioner describes herself as an "impulsive buyer" whose annual expenditures for clothing and shoes might be deemed by some to be rather extravagant.[3] Furthermore, it appears that her wardrobe is constantly changing. According to petitioner, she routinely purchases designer clothing and shoes, wears the items once or twice, and then donates them to an upscale thrift shop in New York, New York. Despite the fact that her 2002 income was substantially less than usual, petitioner claims not to have modified that routine during that year.

Petitioner's timely filed 2002 Federal income tax return includes a Schedule A, Itemized Deductions, on which a $55,764

---

[2] For example, petitioner's 2003 Federal income tax return shows adjusted gross income of $192,535 and property gifts to charities of $133,202.

[3] On the basis of her credit card charges, petitioner estimates that she spent $53,916 on clothing and $9,253 on shoes during the year in issue.

deduction for charitable contributions is claimed.  This amount consists of $5,917 in cash contributions, $48,954 in property contributions, and an $893 carryover from a prior taxable year.

On several Forms 8283, Noncash Charitable Contributions, which were also included with her 2002 return, petitioner shows property donations to various organizations, including Housing Works Thrift Shops and Used Book Café (Housing Works),[4] the Metropolitan Opera at Lincoln Center,[5] the Lazaretto Orthodox Church of Ithaki,[6] and the Hellenic Redcross.[7]  Depending on the items donated and the donee, the "method used to determine the fair market value" of the items is shown on the Forms 8283 as either "actual value" or "straight line depreciation".

A great majority of petitioner's property contributions were made to Housing Works, a "high-end" thrift store located in New York, New York, that sells donated items to its customers.

---

[4]  These were donations of clothing, shoes, rags, furniture, jewelry, books, CDS, DVDs, tapes, a cellular phone, "kitchen accessories/appliances" and "other accessories", "household goods", antiques (e.g., vases, sculptures, and other "decorative items"), and electronic devices.

[5]  This was a donation of a "performance ticket".

[6]  This was a donation of "Church restoration materials", flowers, plants, and "church decorations".

[7]  This was a donation of food.

Housing Works provides the donors with a "Donation Inventory List" form that is completed by the donor (the inventory list). The inventory list invites the donor to make entries showing: (1) The item(s) donated, whether specifically or by generic category (e.g., clothing, furniture, housewares, etc.); (2) the number of items donated; and (3) the value(s) of the donated item(s). Property descriptions and values are provided by the donor, and Housing Works does not verify the accuracy of the information reported on the inventory list.

In the notice of deficiency, respondent disallowed, for lack of substantiation and other reasons, the entire charitable contribution deduction (i.e., $55,764) claimed on petitioner's 2002 return and imposed a $2,930 accuracy-related penalty. According to respondent, the underpayment of tax required to be shown on petitioner's 2002 return is due to negligence or intentional disregard of rules or regulations.

## Discussion

Respondent now agrees that petitioner in entitled to a charitable contribution deduction totaling $4,652.[8] Petitioner now concedes that the charitable contribution deduction claimed

---

[8] This amount consists of $1,053 in cash contributions and $3,599 in property contributions.

on her return was excessive to the extent of $6,629.[9]  We proceed to determine whether petitioner is entitled to a charitable contribution deduction in an amount that lies somewhere in between the parameters set by the parties, and we begin by noting several fundamental and familiar principles of Federal income taxation.

Deductions are a matter of legislative grace, and taxpayers who claim deductions must establish entitlement to them.[10]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Furthermore, a taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine the taxpayer's correct tax liability.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  The taxpayer bears the burden of substantiating the amount and purpose of the claimed deduction.  See Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

The issues in this case arise as a result of the charitable contribution deduction claimed on petitioner's 2002 return. Generally speaking, a taxpayer is allowed to deduct any

---

[9]  This amount consists of $1,160 in cash contributions and $5,469 in property contributions.

[10]  Neither party suggests that sec. 7491(a) requires departure from this general rule.

contributions or gifts made to qualifying organizations.
See sec. 170(a).  Subject to various exceptions, if property other than money is donated, then "the amount of the contribution is the fair market value of the property at the time of the contribution".  Sec. 1.170A-1(c)(1), Income Tax Regs.  The term "fair market value" is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."  Sec. 1.170A-1(c)(2), Income Tax Regs.

A charitable contribution deduction, whether made by cash or otherwise, must be substantiated by at least one of the following:  (1) A canceled check; (2) a receipt from the donee charitable organization showing the name of the donee, the date of the contribution, and the amount of the contribution;[11] or (3) in the absence of a canceled check or receipt from the donee charitable organization, other reliable written records showing the name of the donee, the date of contribution, and the amount of the contribution.  Sec. 1.170A-13(a)(1), Income Tax Regs.  The reliability of the records is determined on the basis of all of

---

[11]  A letter or other communication from the donee charitable organization acknowledging receipt of the contribution and showing the date and amount of the contribution constitutes a "receipt".

the relevant facts and circumstances. See sec. 1.170A-13(a)(2), Income Tax Regs.

If the donation is a small amount, any written or other evidence from the donee charitable organization acknowledging receipt is generally sufficient. See sec. 1.170A-13(a)(2)(i)(C), Income Tax Regs. On the other hand, with respect to a deduction exceeding $500 for a charitable contribution of property, additional information is required to support such a deduction. Specifically, the taxpayer must also maintain written records establishing: (1) The item's manner of acquisition as well as either the item's approximate date of acquisition or the approximate date the property was substantially completed and (2) the cost or other basis, adjusted as provided by section 1016, of property donated by the taxpayer during the taxable year. Sec. 1.170A-13(b)(3)(i)(A) and (B), Income Tax Regs.

Set against these standards, we first consider petitioner's claim with regard to cash donations. As noted above, respondent now agrees that, during the year in issue, petitioner made cash donations totaling $1,053. Petitioner has failed to produce substantiating evidence that would allow for a greater amount. Consequently, the portion of petitioner's allowable charitable contribution deduction for 2002 that is attributable to cash donations is limited to the amount allowed by respondent.

In support of her donations of property to Housing Works, petitioner produced several of the inventory list forms described above. We are satisfied that, for the most part and at least as to form, the inventory lists conform to the requirements of the above-cited regulations. According to petitioner, she estimated the fair market values of the donated items shown on the inventory lists. The actual costs of those items are not taken into account in petitioner's estimates, and petitioner did not provide the prices at which the donated items, or items similar to the donated items, were ultimately sold by Housing Works.[12] The resale prices of the donated items, or similar items, would certainly be relevant and persuasive evidence of the fair market values of various items of property that petitioner donated to Housing Works.[13]

We are satisfied that the inventory list forms present a fairly accurate description of the items donated. Nevertheless, given petitioner's valuation methods, we have severe reservations regarding the fair market values that petitioner assigned to

---

[12] According to petitioner, she checked the accuracy of her fair market value estimates regarding various donated items through Internet research that she performed in preparation for trial.

[13] Petitioner acknowledges the value of this information, as she claims that she unsuccessfully attempted to determine the sale prices set by Housing Works for the various items that she donated.

those items.  We recognize that the determination of the fair market value of an item involves an approximation, and is, at best, an inexact science.  Stanley Works v. Commissioner, 87 T.C. 389, 407-408 (1986); see Colonial Fabrics v. Commissioner, 202 F.2d 105, 107 (2d Cir. 1953); Goldstein v. Commissioner, 89 T.C. 535, 544 (1987); Skripak v. Commissioner, 84 T.C. 285, 320 (1985); Zmuda v. Commissioner, 79 T.C. 714, 726 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Estate of DeBie v. Commissioner, 56 T.C. 876, 894 (1971); see also Cooley v. Commissioner, 33 T.C. 223, 225 (1959), affd. 283 F.2d 945 (2d Cir. 1960).  However, we cannot ignore that, more often than not, personal items, like used clothing and household items, will be worth far less than their original purchase price immediately after they are purchased.  Furthermore, as best we can determine from petitioner's testimony, the original costs of the donated items shown on the Forms 8283 are themselves not actual costs, but only estimates based upon petitioner's  optimistic estimates of the items' fair market values.[14]

We cannot accept petitioner's fair market value estimates of the property that form the basis for a portion of the charitable

---

[14]  Petitioner testified that she first determined the fair market value of an item and then assumed that the cost of the item was at least twice as much.

contribution deduction here in dispute.  On the other hand, we are satisfied that petitioner made property contributions as shown on her return, the fair market values of which would exceed the amount now allowed by respondent.  After careful consideration of the evidence, taking into account respondent's concession, and measuring petitioner's claimed deduction against the average for similarly situated taxpayers, we find that petitioner is entitled to a charitable contribution deduction for property contributions in the total amount of $8,949.[15]

As previously noted, respondent imposed a section 6662(a) accuracy-related penalty.  According to respondent, the underpayment of tax required to be shown on petitioner's 2002 return is due to either negligence or intentional disregard of rules or regulations.  See sec. 6662(b)(1).  The burden of production with respect to the imposition of this penalty is upon respondent.  Sec. 7491(c).

The term "negligence" includes "any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the

---

[15]  Accordingly, petitioner's charitable contribution deduction for 2002 totals $10,002.  This amount takes into account cash donations of $1,053 and property donations of $8,949.  Nothing in the record supports the allowance of a carryover from a prior year.

preparation of a tax return." Sec. 1.6662-3(b)(1), Income Tax Regs.; see sec. 6662(c). Furthermore, "any failure by the taxpayer to keep adequate books and records or to substantiate items properly" also constitutes "negligence". Sec. 1.6662-3(b)(1), Income Tax Regs. The section 6662(a) accuracy-related penalty does not apply if the taxpayer demonstrates that there was a reasonable cause for the underpayment and that the taxpayer acted in good faith with regard to the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The applicability of this exception is made on a case-by-case basis and depends upon all of the pertinent facts and circumstances, such as whether the taxpayer made efforts to assess his proper tax liability and whether there was an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. Higbee v. Commissioner, 116 T.C. 438, 448 (2001); sec. 1.6664-4(b)(1), Income Tax Regs.

The charitable contribution deduction claimed on petitioner's return consists of the following three components: (1) Cash donations, (2) donations of property, and (3) a carryover from a prior year. Petitioner failed to produce sufficient substantiating evidence to support the amount claimed for cash contributions and produced nothing with respect to the

carryover.  Therefore, petitioner is subject to the section 6662(a) accuracy-related penalty with respect to the portions of the underpayment that are attributable to her overstatements of these items.

As previously noted, the determination of the fair market values of personal items is less than an exact science.  In light of the circumstances presented in this case, we are not persuaded that petitioner's overly optimistic valuation estimates of many items of donated property constitutes "negligence" within the meaning of section 6662(b)(1).  Accordingly, petitioner is not liable for the section 6662(a) accuracy-related penalty with respect to the portion of the underpayment of her 2002 tax that is attributable to her overstatement of the fair market values of the donated property.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered under Rule 155.