T.C. Memo. 2008-275

UNITED STATES TAX COURT

ALFRED J. OLSEN AND SUSAN K. SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 15665-06, 8038-07.    Filed December 10, 2008.

<u>Brad S. Ostroff</u> and <u>Martha Combellick Patrick</u>, for
petitioners.

<u>Anne W. Durning</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $19,168 deficiency
for 1999 and a $17,573 deficiency for 2000 in petitioners'
Federal income tax.  The sole issue for decision is whether

petitioners are liable for self-employment tax under section 1402.[1]  We hold that they are liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioners Alfred J. Olsen (petitioner husband) and Susan K. Smith (petitioner wife) are both tax and estate planning attorneys.  Petitioners have been married since 1979 and have no children.  They filed joint Federal income tax returns for 1999 and 2000 (the years at issue).  Petitioners reside in Arizona.

Structure of Petitioners' Business

Petitioners claim to be employees of Olsen-Smith, Ltd. (Olsen-Smith), an Arizona general partnership, the partners of which are three pass-through entities known as professional limited liability companies (PLCs).  Olsen-Smith was a professional corporation until 1987 when it became a general partnership.  The three professional corporations were replaced by the PLCs in 1992 for various reasons including tax considerations.  Olsen-Smith's three equal direct partners during the years at issue were Smith/Olsen PLC (Smith/Olsen), Smith & Associates, PLC (Smith & Associates), and Rossie & Associates,

---

[1]All section references are to the Internal Revenue Code for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

PLC (Rossie/Associates). Petitioners adopted this structure at some point during the mid-1990s.

Smith/Olsen was an Arizona PLC that was managed by petitioner husband and whose members were an irrevocable complex trust named The 1992 WHO[2] Trust (1-percent owner) and an irrevocable grantor trust named The SKO-96 Trust (99-percent owner). Petitioners treated petitioner husband as the grantor of all property in The SKO-96 Trust for Federal income tax purposes and listed him as the grantor on the Forms 1041, U.S. Income Tax Return for Estates and Trusts for 1999 and 2000.[3] Petitioner husband is the beneficiary of both trusts, and petitioner wife is the trustee for both trusts.

Smith & Associates was an Arizona PLC that was managed by petitioner wife and whose members were an irrevocable complex trust named The 1992 WLK Trust (1-percent owner) and an irrevocable grantor trust named The MBK-96 Trust (99-percent owner). Petitioners treated petitioner wife as the grantor of all property in The MBK-96 Trust for Federal income tax purposes and listed him as the grantor on the Forms 1041 for 1999 and

---

[2]The trusts are named for the initials of various family members.

[3]Similarly, the Court found Alfred J. Olsen the grantor of The SKO-96 Trust in Olsen-Smith, Ltd. v. Commissioner, T.C. Memo. 2005-174.

2000.[4]  Petitioner wife is the beneficiary of both trusts, and petitioner husband is the trustee of both trusts.[5]

Petitioners designed The MBK-96 Trust and The SKO-96 Trust to be "Megatrusts," a trademark held by petitioners and others. A megatrust is designed to benefit the beneficiaries while attempting to minimize trust property claims, reduce or eliminate all wealth transfer taxes, and help the beneficiaries reduce or eliminate their own income tax and wealth transfer taxes.

Petitioners' Income

Petitioners and James J. Rossie, Jr. (Mr. Rossie) worked for and received salaries and fringe benefit compensation from Olsen-Smith during the years at issue.  Mr. Rossie was in charge of personnel, including hiring and firing.  Petitioner husband was responsible for financials, and petitioner wife oversaw document management.  Mr. Rossie and petitioner wife earned salaries of $36,000 a year and petitioner husband earned a salary of $12,000 a year during the years at issue.

Olsen-Smith had approximately 15 other employees, including several legal assistants, but petitioners and Mr. Rossie were the

---

[4]Similarly, the Court found Susan K. Smith the grantor of The MBK-96 Trust in Olsen-Smith, Ltd. v. Commissioner, supra.

[5]The other one-third interest in Olsen-Smith was held by Rossie/Associates, an Arizona PLC with a single member, a grantor trust named JJR-97 Trust, whose beneficiary was James J. Rossie, Jr. (Mr. Rossie).  Mr. Rossie practiced law with petitioners and conceded that his third of partnership income is taxable to him as earnings from self-employment.

only lawyers at the firm. The legal assistants earned, on average, more than $35,000 a year, substantially more than petitioner husband.

Olsen-Smith's Business Practices

Olsen-Smith generally contracted with clients and provided legal services pursuant to engagement letters executed between the clients and Olsen-Smith. Clients generally paid Olsen-Smith for the services rendered by the firm but occasionally made checks payable to the individual lawyers.

Olsen-Smith did not have written employment contracts with any employees including petitioners. The PLCs practiced law through their ownership of Olsen-Smith but had no clients or employees of their own.

Distribution of Income and Payment of Tax

Olsen-Smith reported net income of $627,736[6] in 1999 and $437,332 in 2000, which was allocated to the PLCs in equal shares. Smith/Olsen and Smith & Associates separately filed Forms 1065, U.S. Partnership Return of Income,[7] each reporting approximately $202,000 of net ordinary income in 1999 and $141,673 in 2000. The SKO-96 Trust reported taxable income from

---

[6]It appears that the net income of $627,736, as reported on the Form 1065, was adjusted on audit. Olsen-Smith, Ltd. v. Commissioner, supra.

[7]The Form 1065, U.S. Partnership Return of Income, became a Form 1065, U.S. Return of Partnership Income, in 2000.

Smith/Olsen of $189,903 in 1999 and $140,256 in 2000.  The 1992 WHO Trust reported income from Smith/Olsen of $12,502 in 1999 and $1,417 in 2000.  The MBK-96 Trust reported taxable income from Smith & Associates of $190,888 in 1999 and $140,256 in 2000. The 1992 WLK Trust reported taxable income from Smith & Associates of $11,502 in 1999 and $1,417 in 2000.

The PLCs distributed the cash that they received from Olsen-Smith to the trusts as soon as the money was received by the PLCs.  The trust agreements allowed the independent trustee to distribute income or principal for the benefit of the beneficiaries, including for their "benefit, care, comfort, enjoyment or for any other purposes."  The trusts made immediate distributions of all the money to petitioners as soon as they received it from the PLCs.[8]

Respondent issued deficiency notices to petitioners in which respondent adjusted petitioners' taxable income to reflect self-employment tax on the income distributed from the PLCs to the trusts.[9]  Petitioners filed petitions for both years.

---

[8]The trusts held other assets, including assets inherited from petitioners' parents and other partnership interests.

[9]The Commissioner also audited Olsen-Smith, the PLCs, and the trusts for 1999 and 2000.  Petitioners are not strangers to this Court.  Petitioners, as individuals and representatives of these entities, have filed petitions in this Court at least 20 other times.

## OPINION

We are asked to decide whether petitioners are liable for self-employment tax on funds that were distributed from their law firm to their PLCs to their trusts and then to them.  Respondent argues that petitioners are liable for self-employment tax because petitioners' transactions with the trusts lack economic substance.[10]  Petitioners argue that they are not liable for self-employment tax because they carefully and meticulously devised their structure for valid business purposes and the non-salary income allocated to them as beneficiaries of the trusts is not taxable under section 1402.

Burden of Proof

We first address the burden of proof.  Petitioners generally have the burden of proof.  See Rule 142(a).  Petitioners do not dispute that they bear the burden of proof with respect to respondent's theory that their trusts lack economic substance.[11]

---

[10]Respondent argues, alternatively, that petitioners are liable for self-employment tax on the law firm earnings under the assignment of income theory and under secs. 671 through 677.  We need not address these additional arguments because we have determined that petitioners' transactions with the trusts lacked economic substance.

[11]It is unnecessary to determine the burden of proof with respect to respondent's other two theories because we hold that petitioners' trusts lacked economic substance.

Economic Substance

We now address the economic substance theory. Taxpayers have a legal right, by whatever means allowable under the law, to structure their transactions to minimize their tax obligations. See Gregory v. Helvering, 293 U.S. 465, 469 (1935). We will not recognize for Federal income tax purposes, however, transactions that have no significant purpose other than to avoid tax and do not reflect economic reality. See Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). We look through the form of a transaction when that form has not altered any cognizable economic relationships, and we apply tax law according to the substance of the transaction. Id. at 720; Temple v. Commissioner, T.C. Memo. 2000-337, affd. 62 Fed. Appx. 605 (6th Cir. 2003). This rule applies regardless of whether the transaction creates an entity with a separate existence under State law. Zmuda v. Commissioner, supra at 720; Temple v. Commissioner, supra.

We traditionally consider four factors in deciding whether a trust lacks economic substance. These four factors include: (1) Whether the taxpayer's relationship, as grantor, to property purportedly transferred into trust differed materially before and after the trust's formation; (2) whether the trust had a bona fide independent trustee; (3) whether an economic interest in the trust passed to trust beneficiaries other than the grantor; and

(4) whether the taxpayer honored restrictions imposed by the trust or by the law of trusts. Markosian v. Commissioner, 73 T.C. 1235, 1243-1245 (1980); Castro v. Commissioner, T.C. Memo. 2001-115; Hanson v. Commissioner, T.C. Memo. 1981-675, affd. per curiam 696 F.2d 1232 (9th Cir. 1983).

We begin by examining the first factor. Petitioners' relationship to the trust property did not change after the trusts were created. Petitioners apparently transferred their PLC interests to the trusts in the mid-1990s. Petitioners presented no evidence to suggest that this altered their relationship with the PLCs or Olsen-Smith. They continued to manage the firm, work for the firm, and operate their business under the same name, in the same location, and in the same capacity as before the transfer. The trusts engaged in no trade or business, and petitioners, as trustees, had complete control over the income-producing properties of the trusts.

Petitioners' relationship to the income did not change either. Petitioners and Mr. Rossie received distributions of all income earned by the law firm. Each petitioner still took home one-third of the net profits of the firm. Though petitioners testified that assets did not remain in the partnership but were moved to the trusts to protect them from creditors, the record does not support their arguments that the trusts were used to protect the income from creditors. Petitioners distributed to

themselves all the income that their trusts received from Olsen-Smith. This suggests that petitioners were not motivated by a true desire to protect the income from creditors but rather by a desire for tax avoidance. We find that this factor weighs against petitioners.

As to the second factor, petitioners claimed that they had independent trustees even though each was the other's trustee. Petitioners distributed all the earnings from the PLCs to each other as a matter of course. This suggests that they exercised complete control over the trusts, and petitioners presented no evidence to convince us otherwise. We find that this factor also weighs against petitioners because their reciprocal arrangements in the two trusts insured that they would act in harmony with one another.

As to the third factor, no economic interest in the trusts ever passed to any beneficiary other than petitioners. They were the only beneficiaries, and they had no children or other descendants to name as beneficiaries. We find that this factor also weighs against petitioners.

As to the final factor, petitioners argue that they honored all the restrictions imposed by the trusts and by the law of trusts. Petitioners presented no evidence to corroborate this. The evidence does suggest that petitioners used the property as they desired without restriction and that there were no

restrictions on what they did.  Their reciprocal arrangements with each other's trusts further suggest that they would not have faced any such restrictions.  We find that this factor also weighs against petitioners.

For these reasons, we find that the trusts lacked economic substance and we conclude that they are not recognizable for Federal tax purposes.

Self-Employment Tax

Section 1401 imposes a tax on the self-employment income of every individual.  See Baker v. Commissioner, T.C. Memo. 2001-283.  Self-employment income is defined as the net earnings from self-employment derived by an individual during any taxable year.  Sec. 1402(b).  "[N]et earnings from self-employment" include gross income derived by an individual from any trade or business carried on by that individual minus the deductions that are attributable to the trade or business.  See sec. 1402(a).

Petitioners have offered no reason other than that their trusts were the owners of their PLC interests and proper receptacles for their earnings from the law firm to explain why the net income from their law firm is not self-employment income to them.  We have concluded that petitioners' transactions resulting in distributions to and from the trusts lacked economic substance.  It follows that petitioners' share of the net income

of the law firm represents petitioners' net earnings from self-employment.  The income represents petitioners' distributive share of profits of a business conducted by a partnership of which they are, indirectly or directly, members.  Petitioners are liable for self-employment tax on that income for the years at issue.  Accordingly, we sustain respondent's determinations in the deficiency notices.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.